Gaklakd, J.
delivered the opinion of the court.
The petitioners allege that they are the joint proprietors and possessors of six lots of ground in the suburb Delord in this city, fronting on the'river, and have been so for seven years past, that they have been disturbed in the enjoyment and possession of their property, by various persons acting under the authority of the city council of the second municipality, entering upon their premises and committing various trespasses and injuring their property by digging and taking away a large quantity of earth and sand, making holes in the ground, so as to render it unfit for use and destroy its value. That if these acts are permitted and continued the pi'operty will be destroyed. They therefore pray that an injunction issue to restrain the defendants in their proceedings and for $20,000 damages.
The answer is a general denial and an assertion of right to take earth from the batture.
Upon the trial a number of witnesses were examined and many things stated, which were no doubt intended to bear on a very important question which the plaintiffs wished to try, that is, to whom the batture in front of their property belonged. That question having been settled in the case of the Present defendants v. New Orleans Cotton Press Company, Ante, 122, it is not now necessary to re-examine it. As to that question the case stated settles the rights of the present plaintiffs; they being in a situation so nearly similar to the Gotton Press Company as not to make any material distinction between their rights of property in reference to the present defendants. The question in relation to the trespass and damages is the only one now to be [281] considered; and it is perhaps fortunate for a portion of the public, this case comes up so soon after that one, that our decision will be a commentary upon it, and a practical illustration of the principles settled therein.
The evidence shows that the plaintiffs being owners of the front lots, had used various means to raise the batture, by sinking or permitting sunken boats and other craft to remain on it; leaving various materials to mix with the mud deposited by the river. Pulley, one of the plaintiffs, without any authority from the city council, made a levee on the batture outside the levee authorized by law, whereby he reclaimed and protected from inundation a considerable piece of ground, which he used as a lumber yard, for cutting up rafts of timber and flat-boats for wood; he also had on it some stables and store houses or sheds for storing lime, hay and other articles, having a large grocery establishment near on one of his lots; all of which were valuable and produced a large annual revenue. Upon this place the agents of the corporation entered and dug one or more holes, about five feet in depth, about two hundred and fifty feet long, and one hundred feet wide; making about seven thousand cubic yards, taking the earth to use it in the construction of embankments, levees and wharves, which were then being constructed for public use on that batture and in the vicinity above and below it, under an ordinance of the council. The effect of the operations of the agents of defendants, was to entirely break up Pulley’s establishment on the batture.
*537 The jury gave the plaintiffs $5000 damages “ for being deprived of the use of the premises and carrying away the earth,” On whicl verdict a judgment was rendered and the defendants appealed.
"We find a number of bills of exceptions to the admission of testimony, which it is unnecessary to decide as the cause will not be remanded; and as to those of both plaintiffs and defendants we shall despatch them all (some half dozen or more) at once. We think with the exception of the concluding portion of the judge’s charge to the jury, he was correct in every particular, and we have incorporated it nearly verbatim into this opinion, as pre- [282] senting as lucid an exposition of the law, as it is in our power to give. He says:
“ Corporations of cities and towns may construct on the public places, in the beds of rivers, and on their banks, all buildings and other works necessary for public utility, for the mooring of vessels and the discharge of their cargoes, within their respective limits. La. Code, art. 859.
“ The bed of a river is the space contained between its banks. The banks of a river are understood to be that which contains it in its ordinary state of high water; on the banks of the Mississippi where there are levees, the levees form the banks. Id. 448.
“ The bed of rivers is public property, as long as it is covered with water. Id. 444.
“ The me of the banks of navigable rivers or streams is public; accordingly every one has a right, freely to bring his vessels to land there, make fast the same to the trees which are there planted; to unload his vessels, deposit his goods, dry his nets, and the like.
“ Nevertheless, the property of the banks of rivers, belongs to those who possess the adjacent lands. Id. 446.
“ The levees on the banks of the Mississippi being the banks of the river, the space between the levees being its bed, and the beds of rivers being public property, the property of the banks of rivers belonging to those who possess the adjacent lands, it follows that if the owners of lands adjacent to the banks or levees of the Mississippi, were allowed to advance their levees farther into the river; or in other words to advance the banks, they would add a part of what before was the bed. of the river, to their property.
“ By the first section of an act approved February 15th, 1808, (1 Moreau’s Dig. 651,) it is provided that ‘ no individual shall make any new levee, ■ dike or embankment in front of those which exist at present, that is to say nearer the river than those actually existing; unless he shall previously have been authorized thereto by a jury of twelve inhabitants, proprietors of [283] plantations, situated on the banks of the said rivers, convoked for that purpose by the parish judge.’
“By the 5th section of an act approved March 25th, 1813, ‘entitled an act further defining the organization, authority and functions of police juries,’ (2 Moreau’s Dig. 241,) the police juries of the several parishes, were empowered ‘ to make all such regulations as they might deem expedient,’ as to the proportion and direction, the making and repairing of the roads, bridges, causeways, dikes, levees and other highways.
*538 “ By the 7th section of the same act it is enacted that ‘ the authority of the police jury of the parish of Orleans, shall not extend to the city of New Orleans within the present limits, hut it shall he the duty of the corporation of said city to exercise within said limits, the functions committed by law to the police juries.’
“ By the first section of an act approved March 14th, 1810, full power is given to the city corporation of New Orleans to pass all ordinances ‘ to secure the safety and convenience of passing in the streets and squares, ways, levees and other public roads, to'fix the squaring and to prevent any encroachment or other undertaking on the said public roads'
“ By the law of 1836, dividing the city of New Orleans into three distinct municipalities, each municipality is vested with the powers formerly possessed by the city corporation of New Orleans.
“ From what precedes, I infer that as long as the erection of a new levee has not been authorized by the proper authority, the old levee remains the bank of the river ; what is outside remains the bed of the river.
“But by our law, alluvion, that is to say, accretions which are successively formed, and imperceptibly, to a soil, situated on the shore of a river, belongs to the owner of the soil situated on the edge of the water. La. Code, art. 501. Just as we have seen above, that the banks of rivers belong to the owners of [284] the adjacent lands; that is to say, the property of both the alluvions (or batturesj.and of the banks, is in the riparian owner; but as long as the alluvion is not actually incorporated to the main land of the riparian owner; and that actual incorporation only takes place when a levee or bank separates it from the water; and as long as the bank actually remains the bank of the river, according to the definition given above, the use of both remains in the public.
“ We will have seen above, that corporations of cities and towns have the right to construct in the beds of rivers and on their banks buildings and other works necessary for public utility, for the mooring of vessels and the discharge of their cargoes.
“ Upon the whole I consider that the second municipality had a right to construct and erect the works in question, complained of by the plaintiffs and that they were not liable to damages for so doing.”
The judge, in the conclusion of his charge, told the jury he thought the municipality had no right to take away the earth from the premises in question, and therefore it was proper for them to inquire into that fact, and should they find it affirmatively, then they would be justified in awarding damages proportionate to the value of the earth so taken. In this we think the learned judge erred.
In the case of the Municipality No. 2 v. The Cotton Press Company, it was settled, that the use of the banks of a river, and the batture outside of the lévee, was vested in the public, but the ownership or title to the soil was vested in the front proprietors; and they cannot deprive the public of that right of use at their pleasure, or impose any but legal limitations on it. The defendants are the administrators of that use for the general convenience and great objects of public utility, and must necessarily possess all the powers and *539 authority requisite to effect those objects. The article 859 of the Oode, we have seen, authorizes the construction of buildings and works in the beds of rivers, and on their banks, that “ may be necessary for public utility, for the mooring of vessels, and the discharge of their cargoes.” We think, in [285] reference to this article and several others, relating to the uses stated, that they confer plenary powers, and should be liberally construed, when the whole community is to be benefited, and an individual injured no further, than being deprived of such profits, as he supposes he could have made. It may be further remarked, that the expressions for mooring of vessels, spreading nets, building cabins, &c., used in the Oode, whilst they are permissive for those purposes, are not intended as restrictions of the use to those purposes alone, but as examples, or illustrations of its application. The public is a great usufructuary, the corporation is the administrator, and is not restricted to a mere right of way over the batture or the bank, or to keeping'it for the special use of the owner. . They have a right to all the profit, utility, and advantages it may produce, and can made works and improvements to increase the revenues.
Pulley had no right to go upon the batture and act as he did, without the assent of the corporation; he had no right to appropriate to his exclusive use, that which his fellow-citizens were entitled to share with Mm. He had proceeded, until, to use the language of Ms counsel, he had made it almost a private landing. He was violating the law at the time himself, and-has no claim for damages.
It seems a strange doctrine, that earth cannot be used from the batture, to construct works useful to the public, but which so greatly benefit the property inside the levee, which belongs to the riparian owner. Green, who was to give $320,000 for the square, to which this batture belonged, says, he would not have given much more than half as much, if it had been a few squares distant; and Erwin, when he took Mr. Oonrad to look at the property, pending a negotiation to purchase it, pointed out the improvements going on, expatiated on then- importance, the facilities and inducements held out to commerce by them, and now we are seriously presented with a claim for the value of the dirt used, in giving nearly a double value to the property adjoining the place, from whence it was taken. We cannot give our [286] • sanction to such a demand.
We think, the municipality not only has a right to use the earth, taken-' from the batture, in the construction of wharves, embankments and levees, but also for improving the port, and the streets, and avenues leading to it.
The judgment of the parish court is therefore annulled,'avoided and reversed, and ours given for the defendant, with costs in both courts.